IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00007-REB-MEH

AAA NATIONAL MAINTENANCE, a Georgia Corporation, and
DANA MAYFIELD,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, a Municipal Corporation,
DENVER DEPARTMENT OF AVIATION, a Department of the City and County of Denver,
KENTON JANZEN, in his Official Capacity as Denver's Buyer, and in his Individual Capacity,
APRIL HENDERSON, in her Official Capacity as Denver's Contract Maintenance Manager, and in her Individual Capacity,
RUTH RODRIGUEZ, in her Official Capacity as Denver's Executive Sponsor of Strategic Initiatives, and in her Individual Capacity, and
CHARYN BILLICK, in her Official Capacity as Denver's Contract Compliance Technician, and in her Individual Capacity,

    Defendants.

## ORDER ON MOTION TO COMPEL

Pending before the Court is Plaintiffs' Motion to Compel Answers to Deposition Questions Posed to Denver Assistant City Attorney Debra Overn and Request for Hearing [filed September 10, 2009; docket #57]. The Motion is referred to this Court for disposition. (Docket #58.) The matter is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons stated below, the Court **DENIES** Plaintiffs' Motion to Compel.

**I.**    **Background**

Plaintiffs initiated this Sections 1981, 1983 and 1988 action on January 5, 2009, claiming racial discrimination leading to the termination of a business contract between Plaintiffs and the City of Denver for power washing cleaning services Plaintiffs provided at the Denver International Airport. The present dispute concerns Plaintiffs' stated objective in determining who made the

decision to terminate the contract, how that determination was made, and how the determination was communicated to the Plaintiffs. In particular, Plaintiffs seek more information concerning the involvement of Debra Overn, an attorney with the City and County of Denver who authored the September 30, 2008 termination notice.

At a hearing on a different motion on August 11, 2009, the Court discussed the status of Ms. Overn as a witness in this matter, in consideration of her position as an Assistant City Attorney. Plaintiffs described on the record that they sought information regarding the authority of Ms. Overn to send the termination letter, as well as the facts and circumstances around the signing and issuance of the termination letter. The Court stated its opinion that in a matter alleging discrimination in the termination of a contract, who signed the termination would be a relevant inquiry. Defendants agreed, stating "Overn is fair game for questions," but limited this statement by explaining she would be able to disclose only a small amount of information that would not be protected by privilege.

Ms. Overn's deposition occurred on September 3, 2009. The transcript runs fifty-four pages, which the Court has read. Ms. Overn testified that all knowledge she had concerning the termination issue was received from either Kenton Janzen, April Henderson, Ruth Rodriguez, or Calvin Black. As noted in Defendants' opposition to the pending motion, Ms. Overn stated that she had no independent personal knowledge of anything involving the Plaintiffs' performance. She testified about many aspects of her participation in the termination of the contract at issue here, other than the content of documents she reviewed and the content of communications she had with the four individuals identified above. It is this latter information that Plaintiffs seek now.

**II.     Discussion**

Plaintiff's right to relief depends on resolving a question of federal law, therefore federal law

governs privileges raised in this matter. Privileges in federal question cases are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The policy of protecting attorney-client privilege encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Id*. Attorney-client privilege may be waived by the client, who holds the privilege. "The attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990)). Furthermore, the privilege is lost when "the party claiming the privilege is attempting to utilize the privilege in a manner that is not consistent with the privilege," for example, voluntary disclosure of confidential communications to a third party. *Id*. (citation omitted). Most importantly for the current issue, under both Colorado and federal law, the privilege protects communications between attorney and client relating to legal advice. *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998); *Alliance Constr. Solutions, Inc. v. Dep't of Corr.*, 54 P.3d 861, 864 (Colo. 2002).

The work-product doctrine provides extensive protection to the "mental impressions, conclusions, opinions, or legal theories" of an attorney concerning the litigation in question. Fed. R. Civ. P. 26(b)(3). As established by the Supreme Court, "the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Qwest*, 450 F.3d at 1186 (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Work product may be categorized as opinion, which may be considered

absolutely privileged, or non-opinion, which "may be discoverable under appropriate circumstances." *Id*. (citation omitted). Neither the attorney-client privilege nor the work-product doctrine is absolute or comprehensive to all communications between an attorney and his or her client.

Depositions of opposing counsel should be limited to circumstances where the party seeking to take the deposition has shown that: (1) no means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001) (citing *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995)); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). To acquire documents and other tangibles prepared "in anticipation of litigation or for trial by or for another party or its representative," the party seeking such documents and tangibles must show (1) the party seeking the discovery has "substantial need" of the discovery to prepare their case, and (2) the party seeking the discovery "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3); *In re Qwest*, 450 F.3d at 1186.

Here, Plaintiffs submitted excerpts from the depositions of Kim Day (Manager of Aviation), Jim McIntyre (Director of Purchasing), and Ms. Overn. Plaintiffs fail to establish that, after deposing Janzen, Henderson, Black and Rodriguez, relevant questions remain unanswered. Therefore, Plaintiffs have not met their burden of showing entitlement to information that appears to be covered by the attorney-client or work product privileges. Moreover, with the hope of possibly avoiding additional motions practice, the Court will state that even if Plaintiffs have taken or do take the depositions of these four individuals who appear to be the substantive decisionmakers concerning this contract termination and then return to Court to reopen Ms. Overn's deposition, it

is unlikely that the Court would permit further questioning of Ms. Overn *unless* Plaintiffs could establish that she participated in the termination process other than by responding to requests for legal advice, *i.e.*, that Ms. Overn actually gave some sort of personal opinion concerning whether Plaintiffs' contract should be terminated. If the latter were true, then it is possible that Ms. Overn was acting in a dual capacity as counsel and as a decision-making agent of the City and County of Denver. Such circumstances could lead the Court to reconsider this decision.

Accordingly, for the reasons stated above, the Court **DENIES** Plaintiffs' Motion to Compel Answers to Deposition Questions Posed to Denver Assistant City Attorney Debra Overn and Request for Hearing [filed September 10, 2009; docket #57]. At this time, Plaintiffs are precluded from conducting any further deposition of Ms. Overn.

Dated at Denver, Colorado, this 7th day of October, 2009.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge